Judge Underwood,
delivered the opinion of the court.
Holmes having obtained a judgment against the Jbayette paper manufacturing company, and not succeeding in die collection of the whole thereof, by execution, filed his bill against Castleman and others, as the stockholders, with a view to compel them, under the provisions of the act of incorporation, to pay ihe residue of his debt.
The complainant proceeded against Dallam, not as the owner of stock in his own name, but charged that he had taken stock in the names of his infant children, for the fraudulent purpose of evading responsibility, while he enjoyed all the benefits resulting from dividends upon it.
The court after ascertaining the sum, which the complainant was entitled to, divided it among the defendants, in proportion to the amounts of their stock, and decreed against each, severally, for Ms proportion, including Dal-lam, and making him responsible for the shares held in ihe names of Ms children.
To reverse this decree, writs of error with supersedeas, have been prosecuted-
Bill ot'discov-ery lies aar’nst ^corporation*
'Various errors have'bec-n assigned. Those which art important will be noticed, in the progress of this opinion.
lit. It is contended, the bill should have been dismissed. The jurisdiction of the chancellor is denied. This objection cannot he sustained. Those who are members of a corporation aggregate, cannot, in general, be known to the community. Transfers of stock are often made. The members of the company a're constantly changing. These transactions are correctly known, only to the officers of the company. Consequently, there is great propriety in sustaining a hill for the purpose of having a discovery. This bill prays a discovery, and although it ií not sworn to, no objection seems to have been taken te it on that account. After an acquiescence, until final trial in the circuit court, we will not set aside the pro ceedings, because the bill was not sworn to. Such' an objection comes too late here. Besides, to save a multiplicity of suits, and to do complete justice at once, we think the application to o. court of chancery was proper, in the present case,
2d. It is alleged, that the court erred in rendering a decree, when all the shareholders were not before the court, nor all the persons, who were liable to contribution. This objection brings us to a consideration of the charter of the company, and the extent of liability devolving upon the shareholders individually, in case the company becomes insolvent, and the proper mode ol ascertaining and fixing their liability, and compelling them to meet and discharge it.
The act of incorporation may be found in V Littell’s laws, 409. The proviso to the first section provides, “that the estate and properly of all and every individual stockholder, who holds or possesses stock in said corporation, shall, at ail times, be liable and subject in law, in proportion to his or her interest therein, to pay and satisfy all debts and demands, contracted by said corporation, during the time, he or they held stock therein, upon a failure oí the incorporate funds io discharge the same.”
It is clear, that the effect of this provision-must be, if it operates at all, to render each shareholder liable, individually, upon the failure of the incorporate funds for such proportion of any debt against the corporation, as his interest therein bears to the whole stock of the company, provided, such debt he contracted during the ex *3 istence of his or her interest. There can be no doubt, but that each shareholder did incura liability to this extent, and no further. We have already said, that a bill in chancery was proper, to ascertain, and fix the extent of liability. It follows, that the defendants inay be coerced in the usual mode, under the decree. In the application of. these doctrines to the tacts oí the present ease, various subordinate points present themselves, which must be disposed of. When was the debt to Holmes contracted by thecoiporation,is one question? 5t appears from the evidence, that in March, 1816, be lent $3,500 to the company; that the note first executed was renewed on divers occasions, and that the last note, on which the judgment at law was obtained, was executed on the 8th of December. 1819. Now. shall the deb! be considered as havingbeen contracted in March, 1816, so as to render those, who were then shareholders, and only those liable to pay it, or shall it be considered as a debt contracted in December, 1819, and obligatory upon those, who were shareholders at this latter period?
When a debt is continued by renewing notes, each renewal is to boregarded as a new contract.
The shareholders, according to the charter, are individually liable for no other, than the debts contracted «during the time he or they hold stock.'’'’ It is imporiant, therefore to settle which of the above periods shall be considered as the time, when Holmes’ debt was contracted, We think December 8th, 1819, must be regarded as the true date.
When a debt is continued by renewing notes, each renewal is to be regarded as a new contract. I he old contract is then settled, and the old note is then generally caneelle .nd Ihu , there '.s o other contract in existence, buttüe new one. Its date, of necessity then, must be the time when the debt was contracted. These transactions, of renew ng debts by new notes, are equivalent to paying the existing debt, and again borrowing the money. The old debt is pai d otf by the new. The interest accrued may be inserted in the new note, and thus tbe consideration, and the amount of the debt, are both different, from what they we-e originally; all which, in addition to the time stated upon the face of the note, acknowledged by the obligor as the date of the contract, leads us to the conclusion, that December, 1819, ought to be regarded as the date when Holmes’ debt was con-tyacted. It follows, that all those who were shareholcb *4 ers on the 8th of December, 1819, are bound to contribute to the payment of the debt, j
And this gives rise to another question; who were then shareholders? The case is very badly prepared on this point. There is in the record, a paper marked as an exhibit, purporting to show various transfers of stock, and the creation of new shares, and to whom (the several shares belonged at different periods, but we cannot find in any of the pleadings, by whom the paper was exhibited, nor is there any proof, from any quarter, of its accuracy^
Castleman, in his answer, makes two exhibits, but neither of them, according to the tenor of his answer, embraces the entire paper in question. The bill sets out and charges who constituted the shareholders at the date of the note, and the number of shares owned by each, and calls on the defendants to answer, whether they were not o wners of stock, as described, and whether there were any others, who held or possessed stock. No answer pretends to make the discovery, or to set out any other shareholders, than those mentioned in the bill, nor does any defendant, except Roman, deny that his stock is correctly stated, and charged by the allegations of the bill. Roman denies that he owned any stock at the date of the note. The complainant states in the bill, that he has been informed, that since the incorporation of the company, the shares have been greatly increased without any increase of capital; that it was unlawfully done, and he was not bound to regard it. He^ moreover states, that evidences of such stock were issued to divers persons unknown. None of the defendants notice this matter in their answers, except Bryan, who merely says, that, “he does not admit, but so far as relates to himself, denies any impropriety in the increase of shares.”
Under this state of preparation, it is our opinion, that the allegations of ihe bill, in respect to the shareholders, and Ike number of their shares respectively, with the exception of Roman, have been virtually confessed by ihe defendants.
As corporators in this company, we think it is to be. presumed, that the defendants knew their associates. The means of ascertaining them were within their power, and if they desired to diminish their responsibility, by showing that others were liable, it was their duty to *5 .do so particularly, when called on for a discovery, ..Having failed, we think it was proper to settle the liability of the defendants,-as charged in the bill,
If liability oí defendants be sereral, to decree against some of them, and continue cause as to others, is not error,
We perceive no error, therefore, in not bringing before the court those who are named as stockholders, ir Üre paper filed. The rule of apportionment adopter by the court, seems o have correiponded with the a'ile gations of the bill, in regard to the liability of the par ties, and we perceive no error in the distribution of the amounts, they are required to pay.
At the time of rendering the decree, some of the defendants were not served with process; as to such,, the cause was continued.
The propriety of decreeing against part, and continuing the cause as io the other defendants, is questioned. We cannot perceive, that it was erroneous to take that course in this case.
The liability of the defendants is several, and not joint. They were properly untied m the same action, as we have already seen, but when the rule of apportionment was ascertained, and the cause piepared as io any one, we cannot see any sufficient reason, why he should not be directed m do j ustice, without delaying, until others can be reached.
3d. It is assigned for error, that the complainant ought not to have recovered, because there was usury m. the note.
To this objection, the statute ol the bth I1 ebruary, 1819, II Digest, lá2Ü, is a sulficient answer. According. to our calculations, the court stripped the transaction of all usury, and only allowed the principal and legal interest.
The authority of the president of Ibe company to execute die note, on which the judgment was obtained, is also denied in some of the answers, and by consequence, the obligatory effect of the note, on the members of the company, is denied. It is notpretended, that the money borrowed was not applied to the purposes of the corporation; there is nothing in the charter forbidding the company to borrow money; it is authorized to contract debts; it is in proof, that the debt was treated for years, as a company affair, and therefore, we regard ibe objections as unavailing.
*6 4th, !It is assigned for error, in respect to Casileman, that the court rendered a decree against him, at March term, Jb25, when at. the previous term the cause had’ been finally disposed of as to all the parties, except Luckett and L. Bryan. This erroi is not sustained by the facts. The original decree was entered at the February chancery teim, 1825,.audit does not appear that. the cause was disposed of as to Casileman, in any way. At the March te.m, following, the decree was inserted, in, respect to Casileman, nunc pm tuno, it appearing that the clerk had omitted to copy the decree in relation to him, and place it upon the record. This was all right. It was a mere oversight of the clerk, and there was the original decree, which the judge had pronounced, to amend by.
None of the errors relied oh by Casileman, can be sustained.
Dallam relies on the same errors, which Casileman does, except that, which relates to the time of entering the decree agamst v-así,lemán. The same view of i al-lana’s assignment of errors presents itself, as that taken of Castleman’s. But there is a ground of defence assumed by Dallam, which was not applicable to Castle-man.
The bill does not charge Dallam, or set up claim against him as a shareholder, in his own name, hut it piedicaies his liability, upon a subscription “for live shares of stock in the names of his two daughters, (in-fanis) that he paid for the same out of his own effects; that he has always possessed and enjoyed the benefits and advantages arising from said shares; and that he subscribed for the same m Jie names of his daughters, for the'express purpose of avoiding individual responsibility, in case of fa lure of the inco'porate funds to satisfy its demands;” ail which is directly, in so many words, alleged against him.
To these allegations, Dallam only says, that “he has-no stock .n the institution, and in his own right, can con-ceiveof no interest hehatli in the controversy.” 'He does not deny “that he his always possessed and enjoyed the benefits . nd : dvant- ge., arising from said shares, and that he subscribed for the same, for the express purpose of avoid■ *7 ■i,ig individual responsibilityThese allegations are therefore admitted by him to be true.
Person subscribing stock in corporation in names of infants, for purpose of avoiding responsibility in case of insolvency of eorporation and enjoying all benefits arising from the stock, is individually responsible for debts of corporation.
Wickliffc and ¡fi-Wet/, for plaintiffs: Chinn-, for do-fondants.
What effect ought they to have?
It is mam test-from the charter, that the legislature would nor place the safety of the community, in dealing with the corporation, upon the faith of the incorporate funds alone. The legislature intended to secure the community effectually, by hoi-ling the corporators individually liable.
It may be doubted, whether an infant could, under the charter, take stock, and incur an obligation to pay the debts, on failure of the incorpo- a.e funds, which would be beyond revocation, by reason of hisprivilege; because the statute does not, in the act of incorporation,purport to repeal the law, as it stood, in relation to infants, or to vest them with new powers to become corporators.
What would have been the consequence, if all those named in the statute i ad issued the scrip for stock, in the names of their infant ci ild'en, and then posses, ed and enjoyed the benefits arising from t-se shares ? What should we think of it, if they had moreover intended, as is expressly alleged in this case in relation to Dallam, to evade individual responsibility, and thereby defeat the salutary provision of the statute, in behalf of creditors of the corporation?
Whatever may be our ultimate opinion, as to the capacity of infants to become corporators, (which need not now be decided,) insuen acase, we could not denominate the procedure, any thing short of fraud. Whether it be a fraud of that character, which the chancellor might well lay his hands upon, and hold 'those, who engaged in it responsible, as though the stock fairly stood in tneir own names, is also a question, which need not now be decided, for be that as it may, in this case, under the confessed allegations of the bill, Dallam is regarded by us,astliebeneuc>alo’,vner of the stock, although it stands in the names of his infant children, and as such owner-, we consider him responsible,
Wherefore, we see no ground for reversing the decree against him. The decrees, in relation to the plaintiffs in error, are affirmed with costs and damages.